**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

**J. KATE STICKLES**
**JUDGE**

**824 NORTH MARKET STREET**
**WILMINGTON, DELAWARE**
**302-252-3820**

August 31, 2026

**VIA CM/ECF**

David Hosking
Pro Se
1928 W. Oak Hollow Cir.
Lehi, UT 84043
dhoskingii@gmail.com

Matthew O. Talmo, Esquire
Brenna A. Dolphin, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market St., 16th Floor
Wilmington, DE 19801
mtalmo@morrisnichols.com
bdolphin@morrisnichols.com

Joseph A. Piesco, Esquire
Edward Rooker, Esquire
DLA Piper LLP
1251 Avenue of the Americas
New York, NY 10020
joseph.piesco@us.dlapiper.com
edward.rooker@us.dlapiper.com

**RE: Lumio Holdings, Inc., et al.,[1] Case No. 24-11916 (JKS)**
**Varsalone v. Lift Energy Construction Inc., et al.,[2] Adv. Pro. No. 25-52131 (JKS)**
**Letter Ruling on Defendant David Hosking's Motions to Dismiss**
**Related to Adv. D.I. Nos. 10, 12, 15, 22 and 23**

Dear Parties:

This letter is the Court's rulings on Defendant David Hosking's ("Hosking") Motions to Dismiss (the "Motions"), pursuant to Federal Rules of Civil Procedure 12(b)(5) (the "12(b)(5) Motion") and 12(b)(2), (3) and (6) (the "12(b) Motion").[3] Having considered the parties' submissions, and for the reasons set forth herein, the Motions will be denied.

[1] The debtors in these chapter 11 Cases, along with the last four digits of their U.S. federal tax identification number, are Lumio Holdings, Inc. (7119) and Lumio HX, Inc. (7401). The Liquidating Trustee's mailing address is VRS Restructuring Services, LLC, 377 Ocean Boulevard, Unit 5, Hampton, NH 03842.

[2] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Civ. P. 52(a)(3), adopted by Fed. R. Bankr. P. 7052. Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[3] Citations to D.I. reference the docket entries in the main case. Citations to Adv. D.I. reference the docket entries in this adversary proceeding.

## Background[4]

### I. Procedural History

This adversary proceeding arises from the chapter 11 cases of Lumio Holdings, Inc. and Lumio HX, Inc. ("Debtors" or "Lumio" or "Company"). Plaintiff Jeffrey T. Varsalone, the Liquidating Trustee (the "Trustee") of the Lumio Liquidating Trust (the "Trust"), commenced the adversary proceeding by filing a complaint (the "Complaint") against the Defendants asserting: (1) breach of contract, (2) conversion, (3) unjust enrichment, (4) breach of fiduciary duty, (5) breach of contract as to the APA non-compete, and (6) breach of contract as to the employment agreement and restrictive covenant agreement.

Pro se Defendant Hosking seeks to dismiss the Complaint under rules 12(b)(2), (3), (5) and (6) of the Federal Rules of Civil Procedure.[5] The Trustee opposes the Motions.[6] A Notice of Completion of Briefing was filed on March 13, 2026.[7] The Motions are ripe for disposition.

### II. Summary of the Facts[8]

#### A. Lumio's Formation and the Asset Purchase Agreement

In December 2021, Lumio was created through a strategic combination of four regional residential solar businesses in Utah to deliver residential solar solutions to customers across the nation. One of those businesses was Defendant Lift Energy Construction ("LIFT"),[9] whose founders were Defendants Hosking, Hayes and Mehlhoff (the "Founders" or "Shareholders"). To effectuate the strategic combination, an asset purchase agreement (the "APA") was entered into, effective December 10, 2021, between (1) Lumio, as buyer, (2) Hosking, Hayes, and Mehlhoff, as LIFT shareholders, and (3) LIFT, as seller.[10] The Founders stayed on as officers and employees of Lumio.[11]

"Pursuant to the APA, Lumio paid LIFT $15.1 million in exchange for LIFT's rights, title, and interest in certain Assigned Assets." These Assigned Assets include, "inter alia, (1) LIFT's

---

[4] Since the Court writes only for the parties, the Court presumes they have familiarity with the facts and procedural history. Accordingly, the Court includes only the background relevant to decide the Motions.

[5] Adv. D.I. 10 and Adv. D.I. 22.

[6] Adv. D.I. 12 (Answering Brief), Adv. D.I. 15 (Declaration of Brenna A. Dolphin in Support of Plaintiff's Answering Brief in Opposition to Defendant David Hosking's Motion to Dismiss for Insufficient Service of Process (the "Dolphin Declaration")), and Adv. D.I. 23 (Second Answering Brief).

[7] Adv. D.I. 30 (Notice of Completion of Briefing).

[8] The Court adopts the facts from the Complaint, accepting all of the Complaint's well-pleaded facts as true and disregarding any legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

[9] Adv. D.I. 1 (Compl.) at ¶¶ 19-20.

[10] *Id.* at ¶¶ 21-22.

[11] *Id.* at ¶ 25.

material contracts; (2) LIFT's 'accounts, notes, and other receivables, including any prepayments and prepaid expenses' (3) '[a]ll rights to payment, including all accounts receivable, deposits, prepaid expenses and amounts to be received for purchase orders not yet paid related to' LIFT's business; and (4) '[a]ll contracts of [LIFT] relating to [its] Business, including but not limited to customer contracts relating to the installation, maintenance, supplier contracts, ongoing service obligations, warranties and guarantees given to customers/clients of' LIFT."[12]

**B. Founders Instruct LIFT Employees to Underreport Commissions**

In the month leading up to the APA's execution, Defendants Hosking and Hayes instructed LIFT employees to underreport their commissions and, in return, they promised LIFT employees that the underreported commissions would be paid by Lumio as "double down payments" after the APA's execution.[13] Lumio was not aware of Defendants Hosking and Hayes's promise to LIFT employees at the time of the APA's execution.[14] Moreover, "despite being due and owing to the LIFT employees, LIFT and the Founders did not disclose the underreported commissions as liabilities incurred by LIFT prior to or at the time of the APA's execution."[15] "Following execution of the APA, Lumio paid these commissions, totaling approximately $987,944.81, to the former LIFT employees."[16]

**C. LIFT and the Founders, as Lumio Officers and Directors, Retain Over $500,000 in Receivables Due to Lumio**

"Pursuant to the APA, LIFT agreed to 'sell, contribute, convey, and/or assign to Lumio' LIFT's 'rights, title, and interest, of every kind and nature in and to the Assigned Assets, in each case free and clear of all Liens other than Permitted Liens.'"[17] LIFT's Assigned Assets under the APA included "certain Material Contracts listed on Schedule 1.1(a)(i)" of the APA.[18] The Assigned Material Contracts in Schedule 1.1(a)(i) included the "Loanpal Solar / Storage Financing Program Agreement, dated May 13, 2019, between Goodleap fka Paramount Equity Mortgage, LLC DBA Loanpal and Abundant Energy Construction (the "Goodleap Agreement")."[19] Pursuant to Section 1.1 of the APA and Schedule 1.1(a)(i), Lumio purchased and received from LIFT the rights, title, and interest in the Goodleap Agreement, including, but not limited to, any and all accounts receivable thereunder.[20] After the closing of the APA, LIFT

---

[12] *Id.* at ¶¶ 23-24.

[13] *Id.* at ¶¶ 34-35.

[14] *Id.* at ¶ 36.

[15] *Id.* at ¶ 37.

[16] *Id.* at ¶ 38.

[17] *Id.* at ¶ 39.

[18] *Id.* at ¶ 40.

[19] *Id.* at ¶ 41.

[20] *Id.* at ¶ 43.

and the Founders received, but did not remit to Lumio, $585,069.59 in payments for accounts receivable under the Goodleap Agreement.[21]

**D. LIFT and the Founders, as Lumio Officers and Directors, Permit the Continued Claw Back of $164,552 in Funds Due to Lumio**

"Pursuant to Section 1.3 of the APA, Lumio did not assume, and LIFT retained, certain liabilities following the closing of the transaction with Lumio contemplated by the APA (the "Retained Liabilities"), including, among other things, liabilities that 'were incurred or relate to events which occurred on or before the Closing Date, whether or not related to the Assigned Assets.'"[22] LIFT and the Founders permitted the claw back of funds from accounts receivable payments to Lumio based on Retained Liabilities for which LIFT was liable.[23] In making accounts receivable payments to Lumio, Goodleap deducted (as of March 31, 2024) $164,552 from Lumio in accounts receivable payments based on the pre-closing conduct of LIFT and the Founders, which Lumio purchased, was assigned, and was entitled to retain, pursuant to the APA terms. Neither LIFT nor the Founders reimbursed Lumio for these clawed back amounts.[24]

**E. The Founders, as Lumio Officers and Directors, Refuse to Seek Redress for Non-Payment of Funds Owed to Lumio**

Throughout the course of their time as Lumio officers and directors, the Founders were aware of (1) LIFT's retention of accounts receivable payments due and owing to Lumio, and (2) Goodleap's claw back of funds owed by LIFT from accounts receivable payments due and owing to Lumio.[25] Further, despite being notified in or around January 2023 by Lumio's finance team that the Company was facing significant shortfalls in accounts receivable payments, including from Goodleap, the Founders refused to seek redress or repayment from LIFT or Goodleap.[26]

The Trustee seeks a judgment: (1) finding Defendants liable to Plaintiff for breach of contract, conversion, unjust enrichment, and breach of fiduciary duty; (2) awarding damages in an amount to be determined, but no less than $1,735,566.40; and (3) awarding pre- and post-judgment interest and attorneys' fees.

---

[21] *Id.* at ¶¶ 44-46.

[22] *Id.* at ¶ 47.

[23] *Id.* at ¶ 48.

[24] *Id.* at ¶¶ 50-52.

[25] *Id.* at ¶ 53.

[26] *Id.* at ¶¶ 54-55.

## Jurisdiction

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and the Amended Standing Order of Reference of the United States District Court for the District of Delaware. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## Discussion

### I. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5) for Insufficient Service of Process[27]

Hosking seeks to dismiss the Complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure for failure to serve the Summons and Complaint as required by Rule 7004 of the Federal Rules of Bankruptcy Procedure. Having reviewed the pleadings, and for the reasons set forth below, the Court will deny the 12(b)(5) Motion.

Under Rule 12(b)(5) a party may assert insufficient service of process as a defense to a claim for relief. "In resolving a motion under Rule 12(b)(5), the party making service has the burden of demonstrating its validity when an objection to service is made."[28]

Federal Rule of Bankruptcy Procedure 7004(b)(1) authorizes service of process by first-class mail upon an individual "by mailing the copy [of the Summons and Complaint] to the individual's dwelling or usual place of abode or where the individual regularly conducts a business or profession." Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7004 of the Federal Rules of Bankruptcy Procedure, a plaintiff has 90 days to effect service. Federal Rule of Bankruptcy Procedure 9006(e) provides that "[s]ervice by mail of process, any other document, or notice is complete upon mailing."

The Complaint was filed on August 27, 2025; consequently, the deadline to serve the Summons and Complaint was November 25, 2025.

In his Motion, and accompanying Affidavit of Non-Service, dated September 22, 2025, Hosking argues that the Trustee never properly served him with a Summons and Complaint as required by Rule 7004.

---

[27] To the extent the motion raises lack of personal jurisdiction, this defense is denied and addressed below. As to the 12(b)(5) Motion, the Court finds that service of process was made in accordance with the Rules, which is the only requirement of personal jurisdiction disputed in this motion. *In re BYJU'S Alpha, Inc.*, Case No. 24-10140, 2025 WL 659092, at *6 (Bankr. D. Del. Feb. 27, 2025).

[28] *Pelham v. Vbit Techs. Corp.* No. 23-162-JLH-SRF, 2025 WL 947867, at *3, (D. Del. Mar. 28, 2025) (citing *Grand Ent. Grp., Ltd v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993)).

The Trustee's Answering Brief, and the accompanying Dolphin Declaration,[29] explain that on September 22, 2025, when Hosking signed the 12(b)(5) Motion, service had not been effectuated. More specifically, the Summons and Complaint mailed to Hosking on August 27, 2025, was returned as undeliverable.[30] According to the Dolphin Declaration, on September 24, 2025, one day after the original service was returned and five days before the 12(b)(5) Motion was filed, the Trustee served Hosking with the Summons and Complaint at the correct address (the same address identified on the 12(b)(5) Motion).[31]

Hosking does not dispute that service was timely effectuated after the filing of the 12(b)(5) Motion. Additionally, there is no argument, nor evidence, that the service was invalid or defective. Rather, the Dolphin Declaration and Notice of Service[32] show that Hosking was served with the Summons and Complaint within the required ninety-day period. For this reason, the 12(b)(5) Motion to Dismiss will be denied.

## II. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6)[33]

Hosking's 12(b) Motion seeks to dismiss the Complaint for lack of personal jurisdiction,[34] improper venue,[35] and failure to state a claim upon which relief can be granted.[36] The Court will address each defense in turn.

### A. Personal Jurisdiction

Hosking argues the Complaint should be dismissed for "lack of personal jurisdiction." He conclusively states, without any legal authority, that "exercising personal jurisdiction over

---

[29] Adv. D.I. 12 (Answering Brief) and Adv. D.I. 15 (the Dolphin Declaration).

[30] Adv. D.I. 2 (Service on the Defendant was first sent to his then-known address, 3300 N. Triumph Blvd. STE. 100, Lehi, UT 8403-5046); Adv. D.I. 15 (Dolphin Declaration) at ¶¶ 2-3.

[31] Adv. D.I. 9 and Adv. D.I. 11. According to the Dolphin Declaration, out of an abundance of caution, on October 7, 2025, the Trustee again served the Summons and Complaint on the Defendant at the updated service address via certified and first-class mail, postage fully pre-paid, pursuant Bankruptcy Rule 7004(b)(1). *See* Adv. D.I. 15.

[32] The Court takes judicial notice of the Notice of Service (Adv. D.I. 9) which corroborates the Dolphin Declaration.

[33] The Court acknowledges that Fed. R. Civ. P. 12(b)(2) and (3) are waivable defenses. ("A party waives any defense listed in Rule 12(b)(2)-(5) by: omitting it from a motion in the circumstances described in Rule 12(g)(2) . . .." Fed. R. Civ. P. 12(h)(1)(A); "… a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2)). Case law, however, dictates that pro se pleadings be liberally construed. *In re Quorum Health Corp.*, No. 20-10766, 2023 WL 175194 (Bankr. D. Del. Jan. 12, 2023). The Court's decision is based on the merits and not a procedural default by a pro se defendant.

[34] Fed. R. Civ. P. 12(b)(2).

[35] Fed. R. Civ. P. 12(b)(3).

[36] Fed. R. Civ. P. 12(b)(6).

[him] violates due process and Delaware's long-arm statute." The Trustee responds that the Court has personal jurisdiction over Hosking pursuant to Bankruptcy Rule 7004.

**1. Standard of Review**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants."[37] When, like the instant case, the court does not hold an evidentiary hearing on the motion to dismiss, "the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."[38] "When raising a Rule 12(b)(2) defense, the defendant must provide an affidavit contradicting the jurisdictional allegations made by the plaintiff," which Hosking has failed to do.[39] Given the lack of an affidavit opposing personal jurisdiction, the Court need only "review the complaint for the sufficiency of its allegations. . ." to reach a prima facie case.[40]

**2. Legal Analysis**

Under Bankruptcy Rule 7004(f), this court has personal jurisdiction over a defendant if three requirements are met: "(1) service of process has been made in accordance with Bankruptcy Rule 7004 or Civil Rule 4; (2) the court has subject matter jurisdiction under section 1334 of the [Judicial] Code [28 U.S.C. § 1334]; and (3) the exercise of jurisdiction is consistent with the Constitution and the laws of the United States."[41] Defendant Hosking does not dispute the first two elements (and, as discussed above, the Court finds that service of process was made in accordance with the Rules), but argues that the third prong – constitutional due process – is not satisfied.

To satisfy constitutional due process, courts in this jurisdiction apply a two part "general fairness test incorporating *International Shoe's* requirement that certain minimum contacts exist between the non-resident defendant and the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."[42] Here, both of the standards are met.

Hosking argues that minimum contacts cannot be established between him and Delaware because he is a Utah resident and any underlying conduct occurred in Utah. In a bankruptcy case, the relevant forum for purposes of general jurisdiction "is the United States in general, not

---

[37] *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir.2004) (citation omitted).

[38] *Id.*

[39] *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.,* Civ. Action No. 09–022–SLR/MPT, 2009 WL 5184350, at *2 (D. Del. Dec. 23, 2009).

[40] *In re Pursuit Cap. Mgmt., LLC,* 595 B.R. 631, 646 (Bankr. D. Del. 2018).

[41] *Tribune Media Servs. v. Beatty (In re Tribune Co.),* 418 B.R. 116, 121 (Bankr. D. Del. 2009).

[42] *Id.* at 123.

the state in which the bankruptcy court sits."[43] Hosking concedes he is a Utah resident, which is consistent with the Complaint and the address on his pleadings. "It is well-established that a person's residency within the United States constitutes sufficient minimum contacts for the Bankruptcy Court to exercise personal jurisdiction over that person in an action arising under the Bankruptcy Code."[44]

A prima facie case of minimum contacts having been established, the burden shifts to Hosking to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable and would make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent."[45] "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."[46] Hosking does not claim that he would be inconvenienced by litigating in Delaware, nor attempts to make a "compelling case" that he would be unfairly disadvantaged by doing so. Requiring Hosking to participate in a lawsuit in Delaware does not offend notions of fair play and substantial justice. The Court has personal jurisdiction over Hosking and the motion to dismiss for lack of personal jurisdiction is denied.

**A. Venue**

Hosking next argues that the Complaint should be dismissed, or transferred, because venue in this Court is improper under 28 U.S.C. § 1409. This is both unfounded and incorrect. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a), which states that ". . . a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."[47] The underlying chapter 11 case is pending in this Court, and "[a]s a general rule, . . . venue is proper in the district where the bankruptcy case is pending."[48] Section 1409(a) is satisfied, and venue is proper here.

Hosking next requests the Court dismiss or, in the alternative, transfer the adversary proceeding to Utah state court.[49]

---

[43] *In re BYJU'S Alpha, Inc.*, Case No. 24-10140, 2025 WL 659092 (Bankr. D. Del. Feb. 27, 2025); *see also In re Finova Cap. Corp.*, 358 B.R. 113, 119 (Bankr. D. Del. 2006) ("[S]ervice of process anywhere in the United States is sufficient to warrant the exercise of personal jurisdiction over a party to a case where a bankruptcy court has subject matter jurisdiction.").

[44] *In re Capmark Fin. Grp. Inc.*, 479 B.R. 330, 340 (Bankr. D. Del. 2012).

[45] *Id.* at 341.

[46] *Id.* (citing *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir.1993)).

[47] None of the exceptions provided in § 1409(b) or (d) apply to the facts of this adversary proceeding.

[48] *In re Hechinger Inv. Co. of Delaware, Inc.*, 296 B.R. 323, 325 (Bankr. D. Del. 2003).

[49] Adv. D.I. 22 (the 12(b) Motion).

A motion to transfer venue must establish by a preponderance of the evidence that transfer is in the interest of justice or more convenient for parties involved.[50] Courts in the Third Circuit apply the *Jumara* factors to determine the propriety of transferring venue under 28 U.S.C. § 1412.[51] The first six *Jumara* factors are private interest factors, and the remaining six factors are public interest factors. "In order to defeat the presumption that venue is proper in this Court, the twelve *Jumara* factors must strongly favor the Defendant."[52] Although Hosking references the *Jumara* decision, he does so without analyzing the twelve factors or submitting evidence in favor of transferring this adversary proceeding to Utah. Rather, the 12(b) Motion summarily states that every material event underlying the dispute occurred in Utah, LIFT operated in Utah, Hosking resides in Utah, and the APA and the Settlement (as discussed herein) were negotiated and to be performed in Utah.

The Trustee contends that maintaining venue in this Court is appropriate because this Court is overseeing the main bankruptcy case and the other three adversary proceedings involving similar claims and causes of action, with defendants located in multiple jurisdictions. Additionally, he argues maintaining venue in Delaware will promote efficiency, reduce administrative costs, and protect Trust resources for the benefit of creditors.

The Defendant has failed to satisfy the high burden warranting a transfer of venue. The motion to dismiss for lack of venue, or in the alternative, to transfer venue, is denied.

### B. Failure to State a Claim

Hosking next moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the six causes of action against him.

#### 1. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), challenges the sufficiency of the factual allegations in a complaint.[53] Rule 12(b)(6) is related to Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[54] When a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and

---

[50] *In re Hayes Lemmerz Int'l. Inc.*, 312 B.R. 44, 45-46 (Bankr. D. Del. 2004) (citing *Hechinger Liquidation Tr. v. Fox (In re Hechinger Inv. Co. of Del., Inc.)*, 296 B.R. 323 (Bankr. D. Del. 2003)).

[51] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

[52] *Welded Constr., L.P. v. The Williams Cos., Inc. (In re Welded Constr., L.P.)*, 609 B.R. 101, 119 (Bankr. D. Del. 2019.

[53] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[54] Fed. R. Civ. P. 8(a)(2) and 12(b)(6), Fed. R. Bankr. P. 7008 and 7012.

conclusions, and a formulaic recitation of the elements of a cause of action will not do."[55] Two "working principles" underly this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.[56]

Under this pleading standard, a complaint must nudge claims "across the line from conceivable to plausible."[57] The movant carries the burden of showing that dismissal is appropriate.[58] The relevant record for consideration includes the complaint and any document "integral to or explicitly relied upon in the complaint."[59]

In analyzing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[60] Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[61] Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[62] After conducting this analysis, the court may conclude that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[63]

**2. Legal Analysis**

**a. The Claims are Not Time Barred**

As a threshold matter, relying on Article 6.1 of the APA, Hosking argues the Trustee's claims fall "outside the contractual limitations period" and are time barred. Hosking also argues that the claims are barred by a prior Settlement (as defined in the 12(b) Motion) that releases all

---

[55] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (cleaned up).

[56] *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted).

[57] *Twombly*, 550 U.S. at 547.

[58] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).

[59] *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)).

[60] *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675).

[61] *Id.; see also Fowler*, 578 F.3d at 210–11 (citing *Iqbal*, 556 U.S. at 679).

[62] *Santiago*, 629 F.3d at 130.

[63] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (footnotes omitted).

claims arising out of or related to the APA. He further maintains that the Trustee's claims are "barred by release, res judicata, and accord and satisfaction."

The Trustee disputes Hosking's interpretation of the APA arguing that Article 6.1 only applies to the parties "representations and warranties" and does not affect the limitations period for any of the Trustee's claims. Further, the Trustee denies the parties entered into any prior Settlement or release of claims.

After reviewing the Complaint and APA, the Court concludes that Counts IV (breach of fiduciary duty) and Count VI (breach of contract - the Employment and Restrictive Covenant Agreement) do not relate to the APA. The remaining Counts (I-III and V) relate to the APA but are not barred. Hosking relies on the following sentence in Article 6.1 to support his argument that the claims are barred:

> 6.1 Survival and Time Limitations. All representations and warranties of the Parties shall survive this Agreement for a period of twenty-four (24) months following the Closing Date. …

The sentence that Hosking relies upon is limited to representations and warranties and does not limit the period for the claims set forth in the Complaint. Counts I-III are based on Defendants' failure to remit accounts receivable and other payments received post-Closing to Lumio, as required by Articles 1 through 3 of the APA. Count VI is for breach of Hosking's non-compete set forth in Article 7.7 of the APA. None of claims are based on representations and warranties. As a result, reliance on 6.1 is misplaced.

In addition, although Hosking asserts there was a Settlement that bars the claims, the email communications between counsel indicate the parties were unable to reach an agreement[64] and the Memorandum of Understanding at Mediation, Term Sheet, and Tentative Settlement Agreement ("MOA"), was only executed by Hosking (and not any settling party) and dated prior to the emails reflecting the lack of settlement. Accepting all of the Complaint's well-pleaded facts, and absent evidence barring the claims, the Court finds that the claims are not time barred.

---

[64] The email communications reflect as follows:

- July 8, 2024, Email: Lumio's counsel states: "Lumio will not accept any further changes on the term sheet. We can discuss further details in the finalized settlement agreement."
- July 10, 2024, Email: Hosking's counsel states: "Receipt of the shares in mandatory. I'm okay with the contingencies, but not okay with the contingencies executing that part of the settlement but leaving the rest. There is no deal without receiving the shares."
- July 11, 2024, Email: Lumio's counsel states: "I reviewed your 'minor changes' I have to get board approval again. I sent you an email with take it or leave it; and your changes are not making things easier." *See* Adv. D.I. 22-5.

Finally, the Court need not address Hosking's arguments that the claims are barred by affirmative defenses. "It is generally not proper to adjudicate the viability of an affirmative defense on a motion to dismiss." [65]

**b. The First Cause of Action – Breach of Contract**

Count I of the Complaint alleges that LIFT and the Founders breached the APA by failing to remit accounts receivable payments and other payments received post-Closing to Lumio, as required by the APA.[66]

Hosking argues that the Trustee fails to plead facts establishing his personal liability. He contends that the Trustee cannot pursue a claim for breach of the APA against him individually because "no provision of Article 1 [of the APA] or any subsequent section binds Hosking personally."[67] He further argues that fiduciary duty is not plausibly alleged as to him personally.

The Trustee disagrees, arguing that the APA explicitly states that "references to 'Seller' or 'Sellers' herein shall include the Shareholders." The Trustee contends every obligation imposed on "Seller" is also imposed on Hosking personally.

After reviewing the Complaint and the terms of the APA, including Exhibit A that identifies Hosking as a Shareholder, and construing the Complaint in a light most favorable to the Trustee, Count I of the Complaint plausibly asserts a breach of contract claim against Defendant Hosking for failure to remit receivables under the APA. Hosking provides no evidence, case law, nor meritorious argument to the contrary. The motion to dismiss Count I is denied.

**c. The Second and Third Causes of Action – Conversion and Unjust Enrichment**

Counts II and III of the Complaint allege that, pursuant to the APA, Lumio has the post-closing right to the possession of accounts receivable and other payments and interests in certain Assigned Material Contracts, including LIFT's contract with Goodleap. Count II, a claim for conversion, alleges LIFT and the Founders wrongfully exercised dominion and control over the funds due and owing from Goodleap to Lumio and refused to remit the funds to Lumio. Count

---

[65] *See Pinktoe Liquidation Tr. v. Dellal (In re Pinktoe Tarantula Ltd.)*, Adv. Pro. No. 20-50597, 2023 WL 2960894, at *7 (Bankr. D. Del. Apr. 14, 2023); *see also Stanziale v. Nachtomi* (*In re Tower Air, Inc.*), 416 F.3d 229, 242 (3d Cir. 2005).

[66] Adv. D.I. 1 (Compl.) at ¶¶ 78-79.

[67] Adv. D.I. 22 (the 12(b) Motion) at ¶ 7.

III, a claim for unjust enrichment, alleges it is inequitable to permit LIFT and the Founders to retain the funds.

Hosking argues that the Trustee cannot maintain claims for conversion and unjust enrichment because they are duplicative of the breach of contract claim.[68]

The Trustee argues that Federal Rule of Civil Procedure 8 permits a plaintiff to "plead alternative theories of relief based on the same set of facts"[69] and that courts in this district routinely refuse to dismiss conversion claims that are allegedly duplicative of breach of contract claims.

The Court agrees with the Trustee. Federal Rule of Civil Procedure 8(d)(2) allows a party to "set out 2 or more statements of a claim … alternatively or hypothetically," either in one or separate counts.[70] Courts in this jurisdiction have applied Rule 8(d)(2) to allow a plaintiff to "plead alternative claims for relief based on the same facts alleged[,]" and rejected the argument that a plaintiff cannot plead both breach of contract and conversion when based on the same facts.[71] Consequently, the Court will deny Hosking's motion to dismiss Count II and III.

**d. The Fourth Cause of Action – Breach of Fiduciary Duty**

Count IV alleges a breach of fiduciary duty. Hosking asserts that "fiduciary duty is not plausibly alleged as to Hosking personally." Hosking does not provide any explanation or case law to support the purported deficiency of the breach of fiduciary duty claim.

The Trustee urges the Court to ignore the undeveloped and unsupported argument. Alternatively, the Trustee argues he has adequately alleged both elements for a breach of fiduciary duty claim: "(i) that a fiduciary duty exists; and (ii) that a fiduciary breached that duty."[72]

The Complaint states that Hosking became an officer of Lumio in connection with the closing of the transaction contemplated by the APA. Under Delaware law,[73] corporate officers

---

[68] Hosking does not challenge the sufficiency of the factual allegations in the Complaint; therefore, the Court need not determine whether the facts alleged in the Complaint are sufficient to show that the Trust has a plausible claim for conversion or unjust enrichment.

[69] *Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, 295 F. Supp. 2d 430, 438 (D. Del. 2003).

[70] "A party may set out 2 or more statements of a claim or defense alternatively . . .." *See In re UD Dissolution Corp.*, 629 B.R. 11, 35 (Bankr. D. Del. 2021).

[71] *Miller v. Greenwich Capital Fin. Prods. (In re Am. Bus. Fin. Servs.)*, Adv. No. A-06-50826, 2008 Bankr. LEXIS 3068, at *10-13 (Bankr. D. Del. Mar. 20, 2008); *see also Moon Express, Inc. v. Intuitive Machines, LLC*, Civ. A. No. 16-344-LPS-CJB, 2017 WL 4217335 (D. Del. Sept. 22, 2017) (Finding that "Rule 8 permits a party in federal court to plead as many separate claims as it has, regardless of consistency.").

[72] *See Malca v. Rappi, Inc.*, C.A. No. 2020-0152-MTZ, 2021 Del. Ch. LEXIS 98, at *19 (Del. Ch. May 20, 2021).

[73] Delaware law governs the claims arising under the APA and the claims for breaches of fiduciary duty. *See* APA at Art. 8.9.

and directors owe the corporations they serve duties of care and loyalty.[74] Thus, the Complaint establishes that Hosking is a fiduciary and a fiduciary duty exists. The Complaint further alleges that the Founders breached their fiduciary duties by "failing to seek redress or resolution or pursue litigation related to LIFT's misappropriation of corporate funds, LIFT's failure to remit funds owed to Lumio, Goodleap's claw back of funds owed by LIFT from accounts receivable payments to Lumio, and 'double down' commission payments made by Lumio to LIFT employees for commissions owed by LIFT."[75] The Court finds that the Trustee has adequately pled a claim for breach of fiduciary duty. The motion to dismiss Count IV is denied.

In conclusion, the Trustee has alleged sufficient facts to support plausible claims and the motion to dismiss the Complaint under Rule 12(b)(6) is denied.

**Conclusion**

For the reasons set forth above, Hosking has not met his burden, and the Motions will be denied as set forth in the accompanying order.

Very truly yours,

J. Kate Stickles
United States Bankruptcy Judge

---

[74] *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009).

[75] Adv. D.I. 1 (Compl.) at ¶ 97.